IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIMMIE E. LOFTEN                     :
          Plaintiff                  :
     vs.                             :     CIVIL ACTION NO. 3:CV-05-1193
                                     :     (JUDGE VANASKIE)
FRANCINE DIOLOSA, et al.,            :
          Defendants                 :

M E M O R A N D U M

    This predatory lending practice action arises out of the sale of real estate to a new

home buyer in the Pocono Mountain region of Pennsylvania.  Pending before this Court are

motions to dismiss.  Defendants – consisting of real estate developers, a mortgage broker,

appraisers, and a mortgage lender – essentially challenge the viability of each claim

asserted by the plaintiff purchaser under federal and state law.  For the reasons that follow,

the motions to dismiss will be granted in part and denied in part.  Specifically, this case will

be allowed to proceed on the claims asserted under the Racketeering Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., against all Defendants, as

well as the claim of breach of fiduciary duty against the real estate developer and mortgage

broker asserted in the Eighth Claim for relief and the claim of unjust enrichment against all

Defendants presented in the Ninth Claim for relief.  Claims asserted under the Pennsylvania

Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq.;

the Truth in Lending Act ("TILA"), 15 U.S.C. § 1664, et seq. and its implementing Regulation

Z, 12 C.F.R. § 226.24, et seq.; the Real Estate Settlement and Procedures Act ("RESPA"),

12 U.S.C. § 2601, et seq.; and the Pennsylvania common law on fraud will be dismissed without prejudice, affording Plaintiff leave to amend the deficiently presented causes of action.[1]

## I.  BACKGROUND

Plaintiff Jimmie E. Loften avers that as a result of Defendants' "conspiracy and fraudulent acts," Plaintiff "purchased a house for approximately 50% to 100% in excess of its actual value; he was obligated to pay a note and mortgage based upon the inflated valuation of the home and not the true value," and Defendants all profited from this allegedly fraudulent endeavor.  (Am. Compl., ¶ 100.)  Plaintiff avers that Defendants Francine and

---

[1]This action is similar to several other actions brought in this Court alleging fraudulent sales and lending practices in the Pocono Mountain Real Estate Market. See e.g., Wilson, et al. v. Parisi, et al., No. 3:CV-04-1737 (Feb. 26, 2008, Dkt. Entry 301) (granting in part and denying in part Defendants' Motions for Summary Judgment,); Hearns v. Parisi, et al., No. 3:CV-05-0323, (Mar. 3, 2008, Dkt. Entry 117) (granting Defendants' Motions for Summary Judgment); Jeppson v. Parisi, et al., No. 3:CV-05-0564 (Oct. 4, 2007, Dkt. Entry 97)(granting Defendants' Motions for Summary Judgment); Vicuna v. Parisi, et al., No. 3:CV-05-1515 (July 26, 2007, Dkt. Entry 47) (granting in part and denying in part Defendants' Motions to Dismiss); Alvarez, et al. v. Parisi, et al., No. 3:CV-05-0624 (June 18, 2007, Dkt Entry 59) (dismissing action for failure to comply with Court order); and Gaines v. Parisi, et al., No. 3:CV-06-0074 (March 30, 2007, Dkt. Entry 36) (granting in part and denying in part lender's motion to dismiss). Though these other cases differ from the instant case primarily in the identity of the defendant developers, apparent consensus that the holdings in resolving motions to dismiss filed in these other cases would apply in the instant case was reached at the oral argument on motions to dismiss the original Complaint, held on November 28, 2007.  (Dkt. Entry 76, at 3-4.) The holdings in this case are essentially consistent with the rulings in those other cases.

Joe Diolosa and their affiliated companies[2] engaged in false advertising directed toward unsophisticated, lower income, first time home buyers living in the New York Metropolitan Area.  (Id. at ¶¶ 21-23.)  Plaintiff claims that there were material misrepresentations as to the amount in real estate taxes that would be required, pre-payment penalties, the market value of the home, and the benefit of legal representation in connection with the transaction. (Id. at ¶¶ 36, 37, 63, 65.)  Plaintiff avers that the Diolosa Defendants conspired with Defendant appraisers Robert and Jean Innamorati to inflate the value of the property being acquired.  (Id. at ¶ 75.)  Plaintiff avers that the Diolosa Defendants procured Defendant Fremont Mortgage & Loan Company ("Fremont") to provide the financing necessary for the transaction.  (Id. at ¶¶ 44-46.)  Plaintiff asserts that Fremont, as a knowing participant in the conspiracy, failed to follow its customary underwriting guidelines and due diligence procedures (id. at ¶ 125), and that Fremont "fraudulently completed a 'Request for Verification of Employment' form" necessary for the mortgage.  (Id. at ¶ 116.)  Plaintiff claims that Fremont "knew or should have known that it was procuring a sub-prime loan from inflated values from a person who may not have been able to procure the mortgage." (Id. at ¶ 106.)  Plaintiff further avers, "upon information and belief," that Fremont was aware

---

[2]Builders R Us, Inc. ("Builders"), incorporated by Joe Diolosa, who serves as the company's controlling shareholder and officer (Am. Compl., ¶ 11); Mortgage Office Corp. ("MOC"); and Lenders Financial, allegedly owned and operated by Defendant MOC as a fictitious business entity (Am. Compl., ¶ 13.)

of the predatory lending practices in the Pocono region, but "[r]ather than forego the profitability of sub-prime lending . . . Fremont . . . agreed to provide funding." (Id. at ¶¶ 120, 121.)

Plaintiff avers "upon information and belief" that Fremont "intended to hold the loan for a short period of time and then intended to sell or 'flip' the loan to Freddie Mac or Fannie Mae or some other pooled mortgage fund" in order to receive (1) "the original principal amount of the loan without having to wait for each amortized payment;" (2) "an additional approximate 3% to 4% of the gross amount of the loan as premium;" and (3) a percentage of "each monthly mortgage payment over the life of the loan as a result of their servicing agreement with a secondary mortgage holder." (Id. at ¶ 96.) Four months after the closing, Fremont transferred servicing rights of the mortgage to another mortgage company, Saxon Mortgage.[3] (Id. at ¶ 97.)

The First Claim for relief asserted in the Amended Complaint is against Defendants Diolosa and Builders. It alleges that Francine Diolosa, Joe Diolosa, Builders, MOC, Lenders Financial, Robert Innamorati, and Jean Innamorati comprised an association-in-fact enterprise within the meaning of RICO. (Id. at ¶ 175.) Plaintiff avers that Francine and Joe Diolosa, both solely and jointly, conducted the affairs of the enterprise through a pattern of

---

[3]Saxon Mortgage was named as a defendant in the original Complaint,(Dkt. Entry 1), but was not included as a defendant in the Amended Complaint.

racketeering activity consisting of mail and wire fraud.  (Id. at ¶¶ 179-188.)  Plaintiff avers that he has been injured as a result of this pattern of racketeering activity in that he has purchased a home at a price substantially below its fair market value, with a mortgage he cannot afford.  He also asserts that he has sustained "emotional and psychological damages," and that his credit worthiness has been destroyed.  (Id. at ¶¶ 189, 190.)

The Second Claim for relief is premised upon an alleged conspiracy between Defendants MOC and Lenders Financial with Defendants Diolosa.  It alleges that Defendants MOC and Lenders Financial knowingly participated in and facilitated the alleged conspiracy through a number of overt acts, including mail and wire fraud, from which they received substantial remuneration.  (Id. at ¶¶ 195-208.)

The Third Claim for relief asserts that Defendant Fremont conspired with Defendants Diolosa, Builders, MOC, and Lenders Financial in violation of 18 U.S.C. § 1962(c).  Plaintiff avers that Fremont knowingly participated in the conspiracy and performed overt acts in furtherance of the alleged conspiracy, the object of which was "to bring each of the prospective home purchasers, including the instant Plaintiff, to the point of settlement for which the Defendants Diolosa, Mortgage, Lenders Financial and Defendant Fremont would receive substantial remuneration."  (Id. at ¶¶ 209-223.)

The Fourth Claim for relief essentially mirrors the Third Claim, asserting similar RICO conspiracy allegations against appraiser Defendants Innamorati.  (Id. at ¶¶ 225-239.)

The Fifth Claim for relief is asserted against all Defendants for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, et seq.  Plaintiff avers that all Defendants "acted in concert with each other to execute the fraudulent scheme and deceptive conduct" covered by this anti-fraud statute. (Id. at ¶ 241.)  Allegedly, this conduct included misrepresentations about the value and financing of the home as well as Plaintiff's ability to repay the mortgage.  (Id. at ¶¶ 243-286.)  Although the paragraphs set within the Fifth Claim do not differentiate among Defendants, earlier averments that do differentiate are incorporated by reference in the Fifth Claim.

The Sixth Claim for relief is brought against all Defendants for violations of the Truth in Lending Act ("TILA") and Regulation Z, 12 C.F.R. § 226.24(c).  Essentially, Plaintiff asserts that violations of these federal laws constitute per se violations of the UTPCPL. Again, the averments presented under this claim for relief do not identity the spection actions attributable to particular Defendants, but generally alleges that all Defendants have violated these federal laws.

The Seventh Claim for relief, asserted against all Defendants, is brought under the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq.  Plaintiff avers payments of unearned fees and kickbacks, failure to provide notice of the transfer of Plaintiff's mortgage, and failure to provide proper settlement forms at closing, all in violation

of RESPA.  (Id. at ¶¶ 302-309.)  Once again, the Amended Complaint does not delineate the actions that each Defendant supposedly took in violation of this federal law.

The Eighth, Ninth, and Tenth Claims assert violations of Pennsylvania common law. Plaintiff brings the Eighth Claim against Defendants MOC and Lenders Financial alleging a breach of fiduciary duty for failure to act in Plaintiff's best interests.  The Ninth Claim asserts an unjust enrichment claim against all Defendants. (Id. at ¶¶ 320-325.)  The Tenth Claim alleges common law fraud as to all Defendants.  The allegations of fraud set forth in the Tenth Claim do not differentiate among Defendants, though earlier averments that do are incorporated by reference in the Tenth Claim.  (Id. at ¶¶ 326-331.)

The Complaint asserts one prayer for relief, asking for an award of compensatory damages in excess of $500,000 dollars against all Defendants, jointly and severally; treble damages for sums paid by the initial lender to the brokers, allegedly in violation of RESPA; and damages against all Defendants, in an amount not to exceed $1,000 per Plaintiff, for the alleged violations of RESPA.  In addition, Plaintiff seeks attorneys' and experts' fees, injunctive and equitable relief, and punitive damages.

The original Complaint was filed on June 15, 2005, (Dkt. Entry 1), and motions to dismiss were filed by Defendants.  (Dkt. Entries 11, 12, 16, 26, 51.)   While motions were pending, Plaintiff's original Counsel withdrew (Dkt. Entry 54), and this Court stayed litigation by Order dated September 29, 2006.  (Dkt. Entry 55.)  Plaintiff's current Counsel entered

the proceedings on August 27, 2007, (Dkt. Entry 57) and the Order staying litigation was

vacated on October 10, 2007.  (Dkt. Entry 59.)  Oral argument on the first round of motions

to dismiss was heard on November 28, 2007.  During oral argument, Counsel for Plaintiff

expressed a desire to file an amended complaint, which could be done as a matter of right

pursuant to FED. R. CIV. P. 15(a).  Plaintiff filed the Amended Complaint on January 14,

2008, (Dkt. Entry 64), setting off a new round of motions to dismiss by Defendants.  Three

separate motions to dismiss have been filed.  (Dkt. Entries 65, 66, and 71.)  With the

exception of Defendants Diolosa, Builders, Lenders Financial, and MOC, all moving parties

have submitted memoranda of law in support of their positions.[4]   Plaintiff has filed

appropriate opposition briefs.  The motions for dismissal are ripe for decision.

## II.  DISCUSSION

### A.    Standard of Review

The Court's task on a motion to dismiss is to "determine whether, under any

---

[4]Local Rule of Court 7.5 provides that a supporting memorandum of law must be
filed within ten days of filing any pre-trial motion, in default of which the motion will be
deemed withdrawn.  Indications by this Court at oral argument on November 28, 2007, may
have caused Defendants Diolosa, Builders, MOC, and Lenders Financial to believe that
they could rely upon briefs in support of their original motion to dismiss if new motions to
dismiss were filed in response to Plaintiff's Amended Complaint.  Therefore, where
arguments made by these Defendants in the original and fully briefed motion to dismiss and
the current pending motion overlap, this Court will consider these arguments.  Where there
is no overlap, however, this Court will dismiss these new arguments by Defendants Diolosa,
Builders, MOC, and Lenders Financial, pursuant to Local Rule 7.5.

reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

Dismissal of a complaint is appropriate only if, accepting as true all facts alleged, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). As a result of Twombly, Plaintiffs must now nudge their claims "across the line from conceivable to plausible." Id. To state a claim  consistent with the language of FED. R. CIV. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations enough "to raise a right to relief above a speculative level." Id. Each of the claims asserted in the Complaint will be assessed in the context of this standard of review.

B.     First through Fourth Claims for Relief – The RICO Claims Against All Defendants

The First Claim is brought under RICO against Defendants Diolosa and Builders. The Second Claim is brought against Defendants Lenders Financial and MOC, alleging these Defendants conspired with the Diolosas to violate the RICO Act. In the Third Claim for relief, Plaintiff claims lender Defendant Fremont conspired with Defendants Diolosa,

9

Builders, MOC, and Lenders Financial to violate 18 U.S.C. § 1962(c).  The Fourth Claim is brought against Defendants Robert and Jean Innamorati, appraisers who purportedly conspired with Defendants Diolosa, Builders, MOC, and Lenders Financial to violate 18 U.S.C. § 1962(c).

To state a claim for relief under 18 U.S.C. § 1962(c), a plaintiff must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  A RICO conspiracy claim requires additional averments showing a plausible conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity.  See e.g., Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), overruled on other grounds, Beck v. Prupis, 529 U.S. 494 (2000).  Defendants' motions present the question of whether the averments of the Amended Complaint show a plausible ability to meet each of these elements of the RICO and RICO conspiracy claims.

Defendants Diolosa, Builders, MOC, and Lenders Financial argue that the Amended Complaint fails to sufficiently plead an enterprise and a pattern of racketeering activity, the elements necessary to establish a claim under 18 U.S.C. § 1962.  Relying on Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993), Defendants argue that because the underlying claim is deficient, the RICO conspiracy claim asserted against them, accordingly, fails.  Arguments of Defendants Innamorati essentially mirror those of

Defendants Diolosa, Builders, MOC, and Lenders Financial. Defendant Fremont argues that Plaintiff's averments against Fremont are too "vague" and "generic" to assert a viable RICO conspiracy claim against it.   Fremont also claims it was not involved in any of the predicate acts of mail and wire fraud alleged in the complaint.

1.     RICO Enterprise

An essential requirement of a RICO claim is the existence of an enterprise.  See 18 U.S.C. § 1962(b) and (c).  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Plaintiff asserts the existence of an association-in-fact enterprise.

There are three factors elements to an association-in-fact enterprise: (1) "an ongoing organization, formal or informal;" (2) "the various associations function as a continuing unit;" and (3) the enterprise exists "separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981). The Third Circuit has expanded Turkette by additionally requiring "that the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions."  United States v. Irizarry, 341 F.3d 273, 286 (3d Cir. 2003) (quoting United States v. Riccobene, 709 F.2d 214, 222 (3d Cir. 1983)).

Defendants Innamorati argue that the Amended Complaint fails to adequately plead

an association-in-fact enterprise, particularly its existence "separate and apart from" the

pattern of racketeering activity, as required by Turkette.  Contrary to the premise of this

argument, a plaintiff is not required to satisfy the Turkette factors at the pleadings stage.

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 790 (3d Cir. 1984),

cert denied, 469 U.S. 1211 (1985).  "Riccobene and Turkette certainly stand for the

proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the

three described attributes.  But neither case speaks to what must be pleaded in order to

state a cause of action."  Id.  In Seville, the complaint's "bare allegation" of four entities

believed to be enterprises was enough "put the defendant on notice of the claims against

him."  Id.  "The rules of pleading require nothing more at this early juncture than that bare

allegation."  Id.  Therefore, it is unnecessary to demonstrate the Turkette and

Riccobene factors, and it is enough that Plaintiff alleged the existence of an enterprise

consisting of an association of various individuals and corporations, i.e., Francine and Joe

Diolosa, Builders, MOC, Lenders Financial, and Robert and Jean Innamorati.  Such

pleading of an association-in-fact enterprise is sufficient to survive this stage of litigation.  In

this regard, Twombly does not alter the result.  The averments indicate a plausible

association-in-fact enterprise under the leadership and direction of the Diolosas, with the

other individuals and entities playing a contributory role in an ongoing business association.

    2.    Pattern of Racketeering Activity

Another essential element of a RICO claim is a pattern of racketeering activity.  See e.g., Sedima, 473 U.S. at 496.  A pattern of racketeering activity is defined as "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  Racketeering activity includes a number of indictable acts under the federal criminal code, including mail and wire fraud under 18 U.S.C. §§ 1341, 1343.  18 U.S.C. § 1961(1).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  The principal purpose of this particularity requirement at the pleading stage is "to ensure that the defendant receives fair notice of the alleged misconduct or fraudulent acts of which the plaintiff complains in order to prepare a responsive pleading." Beard v. World Wide Mortgage Corp., 354 F. Supp. 2d 789, 799 (W.D. Tenn. 2005).  "The particularity requirement has been interpreted to mean that a plaintiff must allege at a minimum 'the time, place, and content of the alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Id. (quoting Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993).

Instances of mail and wire fraud are averred in the Complaint as follows:

169.  The misrepresentations of the value of the property being sold and the Plaintiff's employment status generated by the Defendants in the preparation of the transmittal of the appraisal report and mortgage application constitute violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343 . . . .

170.  The misrepresentations, statements, and conversations between the Defendants Diolosa, Builders, and Lenders with the Plaintiff utilizing the telephone wires, postal transmittals, and facsimile transmittal through the telephone wires constitute a violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343 . . . .

188.  The Defendants Diolosa committed countless acts of mail fraud and wire fraud related to the instant Plaintiff . . . [including] mailings containing misrepresentations or omissions made in furtherance of the schemes, and the utilization of radio and television transmissions placed by other builders and developers which contained misrepresentations or omissions in furtherance of the schemes.

Plaintiff avers that these are predicate acts constituting a pattern of racketeering activity under 18 U.S.C. § 1961.  These averments are stated with some modicum of particularity, and suffice to put Defendants on notice of the nature of the alleged fraudulent activity.  For instance, the Defendants are on notice of the time period, 2001 through March 2005, over which the alleged fraud took place.  Additionally, Plaintiff has indicated that alleged fraud took place over the wires and through the mail, and that the content of the alleged fraud dealt with the value and characteristics of the property being sold and Plaintiff's employment status.  Accordingly, the RICO claim will not be dismissed for failure to adequately plead a pattern of racketeering activity.

3.    Conspiracy

To plead a conspiracy under § 1962(d), a "plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of

the alleged conspirators taken to achieve that purpose." Shearin, 885 F.2d at 1166.

"[A]greement to commit predicate acts and knowledge that the acts were part of a pattern of

racketeering activity" must also be plead. Id. at 1166-67. Finally, although the Complaint

need not allege that each Defendant in the conspiracy claim himself violated the underlying

substantive provision, Smith v. Berg, 247 F.3d 532, 537-38 (3d Cir. 2001), it must be

shown that at least one of the co-conspirators violated the relevant predicate subsection, in

this case 18 U.S.C. § 1962(c). See e.g., Lum v. Bank of America, 361 F.3d 217, 227 n. 5

(3d Cir. 2004) (upholding dismissal of § 1962(d) claim because plaintiff failed to adequately

plead any substantive RICO violation).

The Complaint approximates the time period for the conspiracy as beginning in 2001

and continuing through March 2005. (Am. Compl., ¶ 212, 229.) The object of the

conspiracy was allegedly "to bring each of the prospective home purchasers, including the

instant Plaintiff, to the point of settlement," for which Defendant Fremont received

"substantial remuneration in the form of sales proceeds, settlement fees, debt service, and

the ability . . . to resell the loan and/or servicing rights and receive new funds," and for

which Defendants Innamorati received "substantial remuneration in the form of sales

proceeds, financing charges, servicing fees, and appraisal fees." (Id. at ¶¶ 213, 230.)

Actions taken in furtherance of the alleged scheme included, with regard to Fremont, failure

"to follow [Fremont's] own guidelines and regulations pertaining to a review of the mortgage

application and financial determinations," and failure to "exercise due diligence in [Fremont's] determination, if any, of the mortgage being tendered to the instant Plaintiff." (Id. at ¶¶ 214, 223.)  With regard to Defendants Innamorati, actions taken in furtherance of the alleged conspiracy include conducting and supervising a fraudulent and inflated appraisal on Plaintiff's property.  (Id. at ¶¶ 231-238.)  The Complaint contains averments that Defendants Fremont and Innamorati knew or should have known of and agreed to the commission of numerous predicate acts, reflecting the necessary mens rea for the existence of a conspiracy.  (Id. at ¶¶ 215, 234.)

Plaintiff has adequately plead the elements required to assert a conspiracy claim against moving Defendants: the time period for the conspiracy, the object of the conspiracy, the actions taken in furtherance of the conspiracy, and the agreement to commit conspiracy. Furthermore, as noted above, Plaintiff has adequately plead the elements of enterprise and pattern of racketeering activity necessary to assert the underlying substantive claim, a violation of § 1962(c).  Accordingly, motions to dismiss the Third and Fourth Claims asserting RICO conspiracy claims against Defendants Fremont and Innamorati must be denied.

C.      Fifth Claim for Relief – Violation of the UTPCPL by All Defendants

The Fifth Claim generally avers that "Defendants' acts, misrepresentations, omissions of material facts, practices, and non-disclosures alleged [in the Complaint]

constituted unlawful, unfair, deceptive, and fraudulent business practices and acts within the

meaning of the PaUTPCPL."  (Am. Compl., ¶ 243.)  For example, Plaintiff alleges that

"Defendants made misleading and deceptive statements and omissions concerning the

value and the financing of the home being purchased by this Plaintiff with the intent that this

Plaintiff relied [sic] on their statements concerning the value of the house and the financing."

(Id. at ¶ 249.)  Plaintiff alleges that Defendants violated the following:

> (i) Passing off goods or services as those of another;
>
> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services;
>
> (iii) Causing likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with, or certification by another;
>
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
>
> (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

(Id. at ¶¶ 272, 283.)  Plaintiff claims to have been injured as a result of these specific unfair

or deceptive acts or practices, and therefore entitled to seek redress as authorized by 73

P.S. § 201-9.2.

Defendants Innamorati and Fremont argue that none of these enumerated provisions apply to any actions taken specifically by these Defendants.  Furthermore, they move to dismiss on the ground that unfair or deceptive acts have not been alleged with sufficient particularity.[5]

The UTPCPL enumerates twenty "unfair methods of competition" and "unfair or deceptive acts or practices," see 73 P.S. § 201-2(4)(I)-(xx), and contains a catch-all provision proscribing "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  Id. § 201-2(4)(xxi).  The catch-all provision has been recognized as applying to residential real estate transactions.  See e.g., Wilson, et al. v. Parisi, et al., No. 3:CV-04-1737 (Feb. 7, 2006, Dkt. Entry 104); Hearns v. Parisi, et al., No. 3:CV-05-0323 (March 27, 2006, Dkt. Entry 42); Lester v. Percudani, No. 3:01-CV-1182, 2008 WL 763591, at *13-15 (M.D. Pa. Mar. 21, 2003); In re Barker, 251 B.R. 250, 261-62 (Bankr. E.D. Pa. 2000).

Courts have used the elements of common law fraud as a guideline for evaluating a

---

[5]Defendants Innamorati also argued that this Court should decline to exercise supplemental jurisdiction over this state law claim, as well as the other state law claims: the Ninth Claim for relief alleging an unjust enrichment claim and the Tenth Claim alleging a common law fraud claim.  That argument was premised upon an assumption that Plaintiff could not present any viable federal law claims.  Because the RICO claims have withstood the motion to dismiss, this Court may properly exercise supplemental jurisdiction over the related state law claims.

claim under the UTPCPL catch-all provision.  See e.g., Skurnowicz v. Lucci, 798 A.2d 788, 794 (Pa. Super. Ct. 2000) (catch-all provision requires proof of common law fraud); Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. Ct. 2000) (same).  The elements of common law fraud include (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that a recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; (5) damage to the recipient as the proximate result of the misrepresentation.  See e.g., City of Philadelphia v. Lead. Indus. Assoc., No. 90-CV-7064, 1992 WL 98482, at *5 (E.D. Pa. Apr. 23, 1992) (citing Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 296 (3d Cir. 1991)).  "Fraud must normally be plead with specifics concerning time, place, speaker, and at times even the content of the alleged misrepresentation."  In re Johnson, 292 B.R. 821, 827 (E.D. Pa. Bankr. 2003) (citing Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986)).  The purpose of pleading these elements is to provide defendants notice of particular unfair or deceptive acts asserted against them and "reasonable opportunity to answer."  Id. (quoting Ross v. A.H. Robins Co., 607 F.2d 545, 557-58 (2d Cir. 1979), cert. denied, 446 U.S. 946 (1980)).

The Fifth Claim alleges violations of the UTPCPL by "all Defendants" without any differentiating averments.  Though he incorporates "by reference each and every allegation set forth [in other sections of the Complaint] as if alleged in full [in the UTPCPL claim]," Plaintiff has failed to articulate the conduct of each Defendant alleged to constitute a

violation of the UTPCPL.  Nor has he alleged the particular provisions of the UTPCPL

violated by a particular Defendant.  Furthermore, allegations that Fremont violated the

UTPCPL are inconsistent with other sections of the Amended Complaint, which aver that

Plaintiff had no contact with Fremont whatsoever.[6]  Under these circumstances, the

Amended Complaint does not satisfy the requirement that fraud be alleged with particularity

as to each Defendant.  Accordingly, motions challenging the viability of the Fifth Claim for

relief will be granted and the UTPCPL claim dismissed with leave to amend.

> E.      Sixth Claim for Relief – Violation of the UTPCPL by all Defendants
>         Based Upon Violations of the Federal Truth in Lending Act and
>         Regulation Z

The Sixth Claim for relief asserts that all Defendants violated 15 U.S.C. § 1664(d)

and 12 C.F.R. § 226.24, et seq., and that these violations of federal law constitute unfair

trade practices actionable under the UTPCPL.[7]  Defendants Innamorati move to dismiss this

---

[6]Similar inconsistencies existed in Wilson, et al. v. Parisi, No. 3:CV-04-1737 (Feb. 7, 2006, Dkt. Entry 104), and Hearns v. Parisi, et al., No. 3:CV-05-0323 (March 27, 2006, Dkt. Entry 42), leading this Court to conclude that the UTPCPL claim did not satisfy the requirement that fraud be plead with particularity as to the lender defendants in those cases, and the UTPCPL claim was, accordingly, dismissed.

[7]15 U.S.C. § 1664(d) (TILA) provides:

> Requisite disclosures in advertisement

> If any advertisement to which this section applies states the amount of the down payment, if any, the amount of any installment payment, the dollar amount of any finance charge, or the number of installments of the period of repayment, then the advertisement shall state all of the following items: (1)

claim on the grounds that there is no averment in the Complaint that the appraiser

Defendants engaged in any advertising pertinent to this case.  Plaintiff concedes in his

Opposing Memorandum that the allegations contained in this claim are not attributable to

Defendants Innamorati.  Accordingly, the challenge brought by Defendants Innamorati is

meritorious and they will be dismissed as Defendants to the Sixth Claim.

Defendant Fremont also moves to dismiss the Sixth Claim on the alternative grounds

that a violation of these federal statutes is not a per se violation of the UTPCPL.  Like the

Innamoratis, Defendant Fremont also contends that the Complaint does not contain any

averment that Fremont participated in any advertisement pertinent to this case.  Plaintiff has

not identified any paragraph in the Complaint to contradict this assertion.  The Sixth Claim

can be dismissed as to Defendant Fremont on the ground that no false advertising has

been attributed to it, obviating consideration of whether or not violations of these federal

statutes constitute per se violations of the UTPCPL.  Accordingly, the Sixth Claim for relief

---

The down payment, if any. (2) The terms of repayment. (3) The rate of finance charge expressed as an annual percentage rate.

12 C.F.R. §226.24 (Regulation Z) provides:

If any of the following terms is set forth in an advertisement, the advertisement shall meet the requirements of paragraph (c)(2) of this section: (i) The amount of percentage of any down payment. (ii) The number of payments or period of repayment. (iii) The amount of any repayment. (iv) The amount of any finance charge.

against Defendants Innamorati and Fremont will be dismissed, with leave to amend.

    F.    Seventh Claim for Relief – Violation of Real Estate Settlement and Procedures Act by all Defendants

The Seventh Claim for relief alleges that all Defendants violated the anti-kickback, unearned fee, and notice provisions of the Real Estate Settlement and Procedures Act (RESPA). 12 U.S.C. § 2601, et seq.[8]  Plaintiff also avers that Defendants violated the provision of RESPA requiring that notice be given to a borrower not less than fifteen (15) days before the effective date of the closing or transfer of the servicing of the mortgage loan or not more than thirty (30) days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan.  12 U.S.C. § 2605(2).

Defendants move to dismiss this claim for relief as legally insufficient.  Defendants, noting that RESPA expressly permits payment of different types of fees for services and facilities, see 12 U.S.C. § 2607(c); Schuetz v. Banc One Mortgage Corp., 292 F.3d 1004, 1005-06 (9th Cir. 2002), assert that the utter failure of Plaintiff to identify (a) any particular fee or payment proscribed by RESPA;[9] (b) who paid the fee; and (c) who received the

---

[8]  The unearned fee and anti-kickback provision articulated in § 2607(a) provides:

    No person shall give and no person shall receive any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident or a part of a real estate settlement service involving a federally related mortgage shall be referred to any person.

[9]Plaintiff does identify one fee in the Seventh Claim, the additional $3000 fee tendered after closing that was not contained on the HUD-1 Settlement Sheet.  Plaintiff

alleged improper fee render the Seventh Claim for relief deficient.

This Court in Wilson, emphasized that "a particular plaintiff may have a RESPA anti-kickback claim against a particular defendant or defendants, but no plaintiff would have a RESPA claim against every defendant." Wilson, et al. v. Parisi, et al., No. 3:CV-04-1737 (Feb. 7, 2006, Dkt Entry 104). The Court, as it did in Wilson, now admonishes Plaintiff to identify a particular Defendant or Defendants implicated in an alleged illegal payment in order to afford Defendants adequate notice of the basis for such a claim. Plaintiff's attempts at clarification in his memorandum in opposition to Defendants' motions to dismiss do not remedy the deficiencies in his Amended Complaint. Furthermore, with regard to the notice provision violations, Plaintiff has not countered Defendants' objections at all. Moreover, because allegations pertaining to the lack of notice are made against all Defendants, despite the duties being incumbent only on some Defendants, Plaintiff has failed to show a plausible claim for relief based upon an alleged RESPA notice violation. Accordingly, Plaintiff's RESPA claim against all Defendants must be dismissed. Plaintiff, however, will be given leave to file an amended complaint with respect to the matter of allegedly prohibited payments and violations of the notice provision under RESPA. Again, Plaintiff is

_____

avers that this additional $3000 fee was paid solely to Defendants Diolosa. This $3000 payment paid to the Diolosas is the only one alleged in violation of RESPA. No payment to Defendants Innamorati or Fremont is specifically averred to have been made in violation of RESPA.

admonished to specify the fees he claims were improper, who paid the fees, who received

the fees, the amount of the fees, and why each fee was improper.  Such a claim may be

asserted only against the generator and recipient of the allegedly improper payment, and

Defendants may not be lumped together.  Likewise, Plaintiff is cautioned to identify a

particular Defendant or Defendants allegedly responsible for breach of the notice provisions

of § 2605, indicating how the notice provisions were purportedly violated.[10]

     G.     Ninth Claim for Relief – Unjust Enrichment Claim Against All
            Defendants[11]

The Ninth Claim for relief asserts an unjust enrichment claim against all Defendants.

Unlike other causes of action brought against all Defendants, Plaintiff avers in his Ninth

Claim for relief facts attributable to specific Defendants as evidencing unjust enrichment.

Plaintiff articulates the unjust enrichment claim in the following paragraphs:

---

[10]Plaintiff also asserts that the "RESPA regulations provide that the Purchaser, the instant Plaintiff, receive a HUD-1 Settlement Sheet . . . at the time of the settlement" and that Plaintiff never received it.  Though the Amended Complaint does not specify, presumably Plaintiff is asserting a violation of § 2603, which requires a lender provide this type of form to borrowers.  As Defendants correctly point out, § 2603 does not explicitly provide for a private cause of action and courts have determined that no implicit cause of action exists under § 2603.  See Morrison v. Brookstone Mortgage Co., Inc., 415 F. Supp. 2d 801, 806 (S.D. Ohio 2005).

[11]Though in their presently pending motion to dismiss Defendants MOC and Lenders Financial challenge the sufficiency of the Eighth Claim for relief, asserting a breach of fiduciary duty against them, this argument is not addressed in the memorandum in support of Defendants' original motion to dismiss.  Accordingly, pursuant to Local Rule of Court 7.5, the motion to dismiss the Eighth Claim on behalf of Defendants MOC and Lenders Financial is deemed withdrawn.

321. The Defendant Fremont issued a loan to the Plaintiff which it knew he could not afford to repay in order to unjustly generate fees for itself and enable it to sell the Plaintiff's mortgage loan to Saxon in order to reap further financial benefits all of which was done to the detriment of the Plaintiff.

322.  The Defendants Innamorati willfully inflated the appraisal of the Plaintiff's property in order to secure future business from the Defendants Diolosa, Mortgage and Lenders, and to enrich itself and the other Defendants to the detriment of the Plaintiff.

323.  The Defendants Diolosa and Builders fraudulently inflated the cost of labor and materials used in the reconstruction of the Plaintiff's home in order to increase the sales price of the home, and to enrich themselves and the other Defendants to the detriment of the Plaintiff.

324.  The Defendants Fremont, Mortgage and Lenders fraudulently completed a "Request for Verification of Employment" form in order to fund and then sell the Plaintiff's mortgage loan to enrich themselves and the other Defendants to the detriment of the Plaintiff.

325.  The Defendants Fremont, Mortgage and Lenders willfully and knowingly withheld information regarding the terms of the Plaintiff's mortgage loan from the Plaintiff in order to conceal the pre-payment penalty and sub-prime terms, and to force the Defendants into executing the mortgage loan to enrich themselves and the other Defendants to the detriment of the Plaintiff.

(Am. Compl., ¶¶ 321-325.)

Relying on Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999), Defendant

Fremont moves to dismiss the Ninth Claim on the ground that Plaintiff is barred from

asserting an unjust enrichment claim as a matter of law because an explicit, written

contract, the Note and Mortgage signed at closing, exists between the parties.  Plaintiff

concedes that the existence of an explicit, written contract would bar a claim for unjust

enrichment, but contends that a valid contract does not exist between the parties.

In order to assert a claim of unjust enrichment, a plaintiff must show (1) he or she has conferred a benefit on the defendant, (2) the defendant has appropriated the benefits, and (3) that the defendant has accepted and retained these benefits under such circumstances as to make it unjust.  See e.g., Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000); Temple Univ. Hosp. Inc., v. Healthcare Mgmt. Alternatives, Inc., 82 A.2d 501, 507 (Pa. Super. Ct. 2003).  The unjust enrichment claim asserted by Plaintiff contains all of these elements as to each Defendant.  Defendant Fremont's motion to dismiss this claim fails because an unjust enrichment claim can exist in the face of a written contract if the contract was procured by fraud.  See e.g., Abdulaziz v. City of Philadelphia, No. 00-CV-5672, 2001 WL 818476, at *2 (E.D. Pa. June 26, 2001) (denying defendant's motion to dismiss an unjust enrichment claim where it was not clear that an express written contract existed between the parties because plaintiff alleged that the contract had been procured by fraud.)  Accordingly, because Plaintiff has adequately plead the elements of an unjust enrichment claim against all Defendants, motions to dismiss the Ninth Claim for Relief will be denied.

H.      Tenth Claim for Relied – Fraud Claim Against All Defendants

Plaintiff generally avers that "Defendants misrepresented the facts relating to the Plaintiff's purchase of the property and the mortgage loan in order to induce him to buy the

property . . . ."  (Am. Compl., ¶ 328.)  Defendants move to dismiss the Tenth Claim on the

grounds that Plaintiff has failed to allege fraud with the particularity required by FED. R. CIV.

P. 9(b).

As laid out above in the discussion on the Fifth Claim for Relief asserting violations

of the UTPCPL, "[f]raud must normally be plead with specifics concerning time, place,

speaker, and at times even the content of the alleged misrepresentation."  In re Johnson,

292 B.R. 821, 827 (E.D. Pa. Bankr. 2003) (citing Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir.

1986)).  These specifics must be plead as to each Defendant in order to accomplish the

purpose of providing defendants with notice of particular unfair or deceptive acts asserted

against them and "reasonable opportunity to answer."  Id. (quoting Ross v. A.H. Robins Co.,

607 F.2d 545, 557-58 (2d Cir. 1979), cert. denied, 446 U.S. 946 (1980)).

The required level of specificity is not reached by Plaintiff's allegations, which

provide in part:

> The Defendants knowingly and intentionally misrepresented material facts of their
> transaction with the Plaintiff by inflating the appraised value of the property, by
> misrepresenting the market value of the property, by providing the Plaintiff with a
> loan he could not afford to repay, by misrepresenting the terms of his mortgage loan,
> by misrepresenting the actual size of the property when Defendant J. Diolosa told
> the plaintiff that the property was greater than an acre when it was not, by not giving
> the Plaintiff credit for a $3000 payment on the property, and by inflating the cost of
> labor and materials used in reconstructing the property.

(Am. Compl., ¶ 327).  Because each Defendant's participation in the transaction varied, it is

imperative that notice of particular fraudulent acts or practices be provided as to each

27

Defendant.  The Amended Complaint clearly fails to meet this basic pleading obligation.

Accordingly, the Tenth Claim for Relief asserting a common law fraud claim against all

Defendants is dismissed without prejudice.  Plaintiff is admonished to provide the required

specificity as to each Defendant in the Amended Complaint.

      I.     Other Issues

      Defendants Innamorati have also moved pursuant to FED. R. CIV. P. 12(e) to require

Plaintiff to re-plead, asserting that much of the lengthy pleading is too vague or ambiguous

to allow for a meaningful response.  Defendants Innamorati also rail against the indefinite

nature of many of the Amended Complaint's averments, which fail to distinguish among

Defendants.

      These issues have been addressed to a large degree in determining whether viable

claims for relief have been presented against particular Defendants in this matter.  For

example, the UTPCPL, RESPA, and common law fraud claims must be amended by

specifying conduct attributable to a particular defendant.  The RICO and unjust enrichment

claims have been found adequate and Plaintiff will not be required to file a more definite

pleading as to those particular claims.

      Defendants have also moved to strike the request for injunctive relief for violations of

the UTPCPL, on the grounds that relief for private actions under the UTPCPL is limited to

money damages, attorneys' fees and costs, and that injunctive relief may only be granted

when an action is brought under the UTPCPL by the Attorney General of Pennsylvania.

See 73 P.S. §§ 201-4, 201-4.1.  Plaintiff concedes that Defendants are correct on this point.

Accordingly, any amended pleading must not include a prayer for injunctive relief in

connection with any UTPCPL claim.

III.  CONCLUSION

      For the reasons set forth in the foregoing Memorandum, Defendants' motions to

dismiss will be granted in part.  Specifically, the Fifth, Sixth, Seventh, and Tenth Claims will

be dismissed with leave to amend.  In all other respects, the motions to dismiss will be

denied.  An appropriate Order follows.

                                         s/ Thomas I. Vanaskie
                                         Thomas I. Vanaskie
                                         United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIMMIE E. LOFTEN,                          :
          Plaintiff                  :
   vs.                                    :        CIVIL ACTION NO. 3:CV-05-1193
                            :        (JUDGE VANASKIE)
FRANCINE DIOLOSA, et al.,                   :
          Defendants                 :

ORDER

NOW, THIS 31st DAY OF JULY, 2008, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. The Motion to Dismiss filed on behalf of Defendants Diolosa, Builders, MOC, and Lenders Financial (Dkt. Entry 65) is GRANTED IN PART. The claims asserted against Defendants Diolosa, Builders, MOC, and Lenders Financial in Claims Five, Six, Seven, and Ten are DISMISSED, WITHOUT PREJUDICE. In all other respects, the Motion to Dismiss of Defendants Diolosa, Builders, MOC, and Lenders Financial is DENIED.

2. The Motion to Dismiss filed on behalf of Defendants Robert and Jean Innamorati (Dkt. Entry 66) is GRANTED IN PART. The claims asserted against Defendants Robert and Jean Innamorati in Claims Five, Six, Seven, and Ten are DISMISSED, WITHOUT PREJUDICE. In all other respects, the Motion to Dismiss of Defendants Innamorati is DENIED.

3. The Motion to Dismiss filed on behalf of Defendant Fremont (Dkt. Entry 71) is GRANTED IN PART. The claims asserted against Defendant Fremont in Claims Five, Six,

Seven, and Ten are DISMISSED, WITHOUT PREJUDICE.  In all other respects, the Motion to Dismiss of Defendant Fremont is DENIED.

4.  A telephonic scheduling conference shall be held on September 4, 2008, at 2:00 p.m.  Counsel for Plaintiff is responsible for making the arrangements for the conference call.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

2