**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JIMMIE E. LOFTEN,** : | |
| Plaintiff : | **CIVIL ACTION NO. 3:05-1193** |
| v. : | **(JUDGE MANNION)** |
| **FRANCINE DIOLOSA, et al.,** : | |
| Defendants : | |

## **MEMORANDUM**

Pending before the court are: (1) the plaintiff's "Motion *in limine* as to the Plaintiff's Criminal Record," (Doc. 186); (2) the plaintiff's "Motion *in limine* as to the Automobile Purchaser/Lessee's Statement," (Doc. 188); (3) the "Motion *in limine* of Defendants, Jean A. Innamorati and Robert Innamorati to Preclude the Appraisal Reports and Testimony of Fred Gilbert and Michelle Williams of Williams Appraisal Services at Trial," (Doc. 190); (4) the "Motion *in limine* of Defendants Jean A. Innamorati and Robert Innamorati to Preclude the Introduction and Use of the Appraisal Reports of Fred Gilbert and Williams Appraisal Services at Trial," (Doc. 195); and (5) the "Motion *in limine* of Defendants Jean A. Innamorati and Robert Innamorati to Preclude the Introduction and Use of All Documents and Testimony Regarding the Appraisal of a Property Purchased by Mary Shirley Golphin," (Doc. 200).

Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); <u>Bernardsville Bd. of Educ. v. J.H.</u>, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

In considering motions *in limine,* "[t]he Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, 268 F.R.D. 190, 196 (M.D. Pa. 2010). This inclusiveness is demonstrated by way of Rule 401's expansive definition of relevant evidence, Rule 402's definition of the admissibility of relevant evidence in sweeping terms, and Rule 403's description of the grounds for exclusion as an exception to the general rule favoring admission of relevant evidence. <u>Id.</u> at 196-97. These broad principles define the court's discretion in considering motions *in limine*.

**(1)    Plaintiff's Motion *in Limine* as to his Criminal Record**

In his motion to exclude any evidence of his criminal history at trial, the plaintiff provides that he was convicted in 1980 of "narcotics offenses and

conspiracy" and was released from incarceration in June 1995. According to the plaintiff, he has not been convicted of any crimes since his release from prison. The plaintiff believes that the defendants' attempt to admit his criminal history into evidence at trial will unfairly prejudice the jurors' view of him. Plaintiff argues that any such evidence is excludable under Rules 403, 404(a)(1), 404(b)(1), 608(a), 608(b), and 609(b) of the Federal Rules of Evidence.

In considering the plaintiff's motion, the court finds the provisions of Rule 404(a)(1) and (b)(1) to be inapplicable here. Under 404(a)(1), character evidence is not being used to show that he acted in accordance with his character or a character trait on a particular occasion. Nor is the plaintiff's criminal history being offered under Rule 404(b)(1) to demonstrate the plaintiff's character in order to show that he acted in accordance with his character on a particular occasion. Instead, the defendants seek to use the plaintiff's criminal history to attack his credibility and truthfulness.

The court further finds that Rule 608(a) and (b) are inapplicable in that 608(a) relates to reputation or opinion evidence, which is not at issue here, and Rule 608(b) specifically carves out an exception for a criminal conviction under Rule 609.

Plaintiff concedes that Fed.R.Evid. 609(a)(2) mandates the admission of all convictions of any crime involving dishonesty or false statements. He argues that his conviction on narcotics charges is not a crime which involves dishonesty or false statements. However, what the plaintiff fails to discuss in his motion *in limine* is that, in addition to his narcotics offenses, he was also convicted under the criminal RICO statute and for tax evasion.

The terms "dishonesty or false statement" in Rule 609(a)(2) are descriptive of convictions peculiarly probative of credibility," such as those for "perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi* the commission of which involves some element of dec[e]it, untruthfulness, or falsification bearing on [a witness's] propensity to testify truthfully." Sanders v. Ritz-Carlton Hotel Company, LLC, 2008 WL 4155635, *3 (S.D.N.Y., Sept. 9, 2008) (citing H.R.Rep. No. 93-1597, at 9 (1974) (Conf.Rep.), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7103).

According to the plaintiff's judgment and commitment order, (Doc. 212)[1], as well as his own deposition testimony, the plaintiff was convicted of RICO

---

[1] The Advisory Committee Notes to the 2000 amendments to Rule 609 provide that a court may refer to extraneous information to determine whether a crime falls within Rule 609(a)(2).

violations pursuant to 18 U.S.C. §1962(d), as well as tax evasion pursuant to 26 U.S.C. §7201. While the court has no information before it relating to the factual circumstances of the plaintiff's RICO conviction[2], the plaintiff's conviction for tax evasion satisfies the requirements of Rule 609(a)(2). See Sanders, supra (conviction for tax evasion satisfies the requirements of Rule 609(a)(2)); Hicks v. U.S., 89 Fed.Cl. 243, 262 (2009) (conviction for tax evasion pursuant to 26 U.S.C. §7201(1) satisfied requirements of Rule 609(a)(2)); U.S. v. Lewis, 2009 WL 1307458, at *17 (W.D. Pa., May 8, 2009) (conviction under 26 U.S.C. §7201 satisfies requirements of Rule 609(a)); U.S. v. Serot, 648 F.Supp. 494, 495 (E.D.Pa. 1985) (same)).

When a criminal conviction involves dishonesty or false statement, the conviction is automatically admissible under Rule 609(a)(2). Having determined that the plaintiff's conviction for tax evasion satisfies Rule 609(a)(2), the court must also consider the timeliness of the conviction under Rule 609(b) before it can be admitted. Rule 609(b) bars a conviction more than ten years old to attack a witness's credibility unless "the court determines, in the interests of justice, that the probative value of the

---

[2]The court notes that a conviction for participation in a RICO enterprise involving fraudulent schemes has been found to satisfy the requirements of Rule 609(a)(2). See Sanders, supra.

5

conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Convictions which fall outside of the ten-year limitation period should only be admitted in rare circumstances. See Sanders (citing Zinman v. Black & Decker, Inc., 983 F.2d 431, 434 (2d Cir. 1993) (citing Senate Report that convictions over ten years old should only be admitted "very rarely and only in exceptional circumstances" but affirming admission of old conviction where conviction bore heavily on credibility)). The ten-year limitation period is measured from the later of the date of conviction or the date of release.

Here, the plaintiff was convicted in 1980 and released from incarceration in June of 1995. Thus, the ten-year limitation period began to run from the date of his release. The plaintiff's release occurred more than ten years ago and may only be admitted if the court finds that the probative value of the conviction substantially outweighs the prejudicial effect.

While evidence of convictions over ten years old should only be admitted in rare circumstances, the court finds that the facts of this case warrant the admission of the plaintiff's criminal history. Specifically, the plaintiff has alleged through the instant action that the defendants engaged in predatory lending and defrauded him into purchasing a property at an

inflated price. The jury will be called upon to assess the plaintiff's credibility as to this claim. The plaintiff's criminal history, which admittedly includes numerous real estate transactions and tax evasion, bears directly on his credibility in this case.

Whether the plaintiff was an innocent purchaser of property unaware of the "ins and outs" of real estate transactions and was defrauded into purchasing the property at issue is directly at the heart of this matter. The plaintiff's conviction for tax evasion which, by the plaintiff's own admission, involved his active participation in numerous real estate transactions goes directly to the plaintiff's credibility in the present action. The court finds therefore that any prejudice to the plaintiff by allowing in evidence of his criminal history is substantially outweighed by the probative value of the evidence and that the plaintiff's 1980 conviction is admissible for impeachment purposes under Rule 609(b)[3].

---

[3] Rule 609(b) also requires that a party seeking to introduce a conviction older than ten years must provide sufficient notice that such evidence will be used at trial "so that the party has a fair opportunity to contest its use." In his motion *in limine*, the plaintiff raises no challenge to the notice requirement. Moreover, by way of his motion *in limine*, the plaintiff has had a fair opportunity to contest use of his criminal conviction at trial.

### (2)  Plaintiff's Motion *in Limine* as to the Automobile Purchaser/Lessee's Statement

In his second motion *in limine*, the plaintiff seeks to exclude any testimony or documentation relating to an automobile purchaser/lessee's statement signed by him on or about October 18, 2004, when he purchased a 2003 Mercedes-Benz Model ML-350 in Morristown, New Jersey. The statement lists the plaintiff's employer as Builders R Us when, in fact, the plaintiff admittedly never worked for that company. The plaintiff argues that he did not place any of the information on the form and that the form was prepared at the direction of defendant Joseph Diolosa. The plaintiff argues that the statement is not relevant and, even if relevant, it is more prejudicial than probative.

As the defendants respond, the real estate closing which forms the basis for the instant action took place on October 13, 2004, one week before the plaintiff signed the automobile purchaser/lessee statement. The plaintiff alleges in the instant action that employees of defendant Lenders' and/or defendant Joseph Diolosa and/or employees of Builder's R Us[4] fraudulently

---

[4]Builders R Us is no longer a defendant in this action.

stated in his mortgage application that he was employed as a salesperson for "Bill's Rubber Stamps." The plaintiff cited this fraudulent statement as a partial basis for defendant Lender's fraud and as a predicate act in support of his RICO claim. Specifically, the plaintiff alleges in Count 3 of his complaint, "RICO CLAIM AGAINST THE DEFENDANTS THE MORTGAGE OFFICE CORP. AND THE MORTGAGE OFFICE CORP d/b/a LENDERS FINANCIAL,"

> 200. The Defendants Mortgage and Lenders knew that the Plaintiff was unemployed at the time he applied for the mortgage loan so they agreed to complete a fraudulent "Request for Verification of Employment" form which indicated that the Plaintiff worked for Bill's Rubber Stamps when he did not.
> 201. The Defendants Mortgage and Lenders falsified the Plaintiff's employment status to ensure a mortgage loan was given to the Plaintiff so they could unjustly enrich their companies and the other Defendants, and allow Defendant Fremont to sell the Plaintiff's mortgage loan.

(Doc. 64).

The plaintiff testified at his deposition on May 27, 2009, that, while he did not prepare the real estate documents, he did sign the documents which verified that he worked for Bill's Rubber Stamps, and admitted that he, in fact, did not work at Bill's Rubber Stamps. (Doc. 218, Ex. B, pp. 56-57). The plaintiff was then presented at his continued deposition on April 30, 2013, with

9

a handwritten note dated September 27, 2004, shortly before the automobile purchaser/lessee's agreement and the closing documents at issue, which indicated that the plaintiff worked at Bill's Rubber Stamps as a district sales manager earning at least $4,500 per month. As with the mortgage application, the plaintiff again indicated that he did not prepare the document at issue, but testified that the signature on the document looked like his signature and that it was possible that he signed the document. (Doc. 218, Ex. C; Ex. D, p. 9-11).

The automobile purchaser/lessee statement at issue indicates that the plaintiff worked for Builder's R Us as a district sales manager for six years prior to the application earning $80,000 annually. (Doc. 218, Ex. A). As the plaintiff had indicated with the other documentation presented to him, the plaintiff testified at his April 30, 2013, deposition that he did not prepare the automobile purchaser/lessee agreement, but that the signature on the agreement was his. (Doc. 218, Ex. D, pp. 18-20).

The fact that the two loan applications and the handwritten note all occurred within a close proximity in time, all of which contain false employment information, and all of which the plaintiff claims he did not

prepare, but admits to signing[5], is relevant to the case at hand under Fed.R.Evid. 401. Moreover, the fact that the plaintiff claims that defendant Diolosa had involvement with the two loan applications for credit which contained false employment information is relevant.

The court finds that the probative value of the automobile statement outweighs any prejudice to the plaintiff in that, under Fed.R.Evid. 404(b), the information in the statement, read in conjunction with the mortgage application and handwritten note, can be used to establish that the plaintiff's signing of these documents all containing false employment information was not accidental and can assist the jury in assessing the plaintiff's credibility. Moreover, the probative value of the proximity in time in which the documents were prepared and signed and the practically identical circumstances under which the plaintiff testified the documents were prepared and signed outweigh any prejudice to the plaintiff in admitting the documents.

In light of the above, the plaintiff's motion *in limine* to exclude the automobile statement/lessee's agreement will be denied.

---

[5]Again, as to the handwritten note, the plaintiff admits that the signature appears to be his and that it is possible that he signed the document.

3.  **Motion *in Limine* of Defendants Jean A. Innamorati and Robert Innamorati to Preclude the Appraisal Reports and Testimony of Fred Gilbert and Michelle Williams of Williams Appraisal Services**

The plaintiff's surviving claims against the Innamorati defendants are that these defendants allegedly entered into a conspiracy with the defendant Mortgage Office Corp. d/b/a Lenders Financial ("Lenders"), the Diolosa defendants and Builders R Us, Inc., to ensure that the appraised value of the plaintiff's residential home was equal to or more than the contemplated agreed price between the Diolosa defendants and plaintiff. According to the plaintiff, as a result of this conspiracy, a fraud was perpetrated upon him which ensured that the Innamorati defendants would receive excessive appraisal fees through repeat business.

The Innamorati defendants argue that the plaintiff provided two appraisal reports in discovery: the first was by Fred Gilbert dated May 27, 2005, and the second was by Michelle Williams of Williams Appraisal Service dated November 19, 2007. Neither of these individuals were proffered by the plaintiff as experts. The Innamorati defendants argue that any testimony offered by either of these individuals regarding the process or methodology of their appraisal services and the results arrived at from those processes are based on knowledge and experience clearly outside the realm of lay jurors.

Moreover, the Innamorati defendants argue that appraisal reports as to property valuation are not evidence, they are expert opinion. The plaintiff has proffered neither of these individuals as experts. In fact, the Innamorati defendants argue that the plaintiff has not provided any expert reports critical of their appraisal process, methodology or the results arrived at from those processes. As such, they argue that the plaintiff cannot offer any evidence critical of their appraisal process, methodology or the results arrived at from these processes for the real estate property at issue.

Pursuant to Fed.R.Evid. 701, the plaintiff argues that the testimony offered by Mr. Gilbert and Ms. Williams will be concerning their appraisal reports and the characteristics of the plaintiff's property, such as the size of the lot, the size and characteristics of the home, what they did and how they were selected. The plaintiff argues that jurors understand what appraisal is and that an appraisal of a property is not outside the realm of lay jurors as they will have the opportunity to read the appraisal reports.

Despite the plaintiff's characterization of the testimony of Mr. Gilbert and Ms. Williams, the court finds that the opinions of Mr. Gilbert and Ms. Williams are based on "scientific, technical, or other specialized knowledge withing the scope of Rule 702," which would preclude consideration under Rule 701. The

13

purpose of this component of Rule 701 is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Advisory Committee's Notes accompanying Fed.R.Evid. 701. The Advisory Committee went on to state that "the distinction between law and expert witness testimony is that lay testimony 'results from a process or reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Id. (quoting State v. Brown, 836 S.W.2d 530, 549 (1992). The 2000 Amendments to the Advisory Committee's Notes accompanying Fed.R.Evid. 701 classify appraisers as experts. As such, Rule 701 is inapplicable to the plaintiff's witnesses.

Moreover, although the plaintiff argues that he identified Mr. Gilbert and Ms. Williams as expert witnesses in his pre-trial memorandum as required by Fed.R.Civ.P. 26(a)(2)(A), and provided the defendants with a copy of their appraisal reports as required by Fed.R.Civ.P. 26(a)(2)(B), upon review, the appraisal reports do not meet the expert written report requirements of Rule 26(a)(2)(B), which require (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used

14

to summarize or support them; (4) the witness's qualifications, including an list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case – they are simply appraisal reports related to the property.

In light of the above, the motion *in limine* of defendants Jean A. Innamorati and Robert Innamorati to preclude the appraisal reports and testimony of Fred Gilbert and Michelle Williams of Williams Appraisal Services at trial will be granted[6].

**4.    Motion *in limine* of Defendants Jean A. Innamorati and Robert Innamorati to Preclude the Introduction and Use of the Appraisal Reports of Fred Gilbert and Williams Appraisal Services at Trial**

In this motion *in limine*, the Innamoratis argue that, the expert report issue aside, the appraisal reports of Mr. Gilbert and Ms. Williams should be

---

[6]The court notes that, in addition to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the plaintiff cites to the Pennsylvania Rules of Civil Procedure in arguing for the allowance of the appraisal reports and testimony; however, as the Pennsylvania Rules of Civil Procedure are inapplicable in this action, the court has not given this argument any consideration.

precluded under Fed.R.Evid. 401 as irrelevant and Fed.R.Evid. 403 as more prejudicial than probative.

Although the defendants' arguments may be well-taken, the court has ruled in relation to the Innamoratis' initial motion *in limine* that both the testimony and appraisal reports of Mr. Gilbert and Ms. Williams will be preluded on the basis that the plaintiff failed to provide appropriate expert written reports as required under Fed.R.Civ.P. 26(a)(2)(B). Therefore, this motion *in limine* is dismissed as moot.

**5.    Motion *in limine* of Defendants Jean A. Innamorati and Robert Innamorati to Preclude the Introduction and Use of All Documents and Testimony Regarding the Appraisal of a Property Purchased by Mary Shirley Golphin at Trial**

In relation to his remaining claims against the Innamoratis, the plaintiff alleges that the Innamorati defendants engaged in a "pattern of racketeering activity" by inflating appraisals for their benefit and the benefit of others who were involved in the conspiracy. In support of his claim, the plaintiff seeks to introduce the testimony of another individual, Mary Shirley Golphin, regarding her appraisal by the Innamoratis and mortgage loan through Lenders, who he believes was a victim of the defendants' conspiracy. The plaintiff claims that, shortly after he purchased his property, Lenders sought to have the

16

Innamoratis appraise the property to be purchased by Ms. Golphin. A complaint was made in relation to the appraisal of this property and the Commonwealth of Pennsylvania Department of State conducted an investigation to determine whether Jean Innamorati's appraisal of Ms. Golphin's property complied with the Uniform Standards of Professional Appraisal Practice, ("USPAP"). In relation to that investigation, the Commonwealth determined that Jean A. Innamorati violated the Real Estate Appraisers Certification Act, ("Act"), by: (1) failing to complete an appraisal assignment within the requirements of the USPAP; (2) failing or refusing to exercise reasonable diligence in developing an appraisal, preparing an appraisal report, or communicating an appraisal, and (3) negligently or incompetently developing an appraisal, preparing an appraisal report, or communicating an appraisal. (Doc. 200, Ex. C). A civil penalty was imposed and Jean A. Innamorati was required to attend and complete remedial professional education courses.

The plaintiff contends that the above is relevant as to whether the Innamorati defendants conspired with Lenders and Joseph Diolosa to defraud Ms. Golphin on the purchase of her property by inflating her appraisal, breaching the fiduciary duty to Ms. Golphin, unjustly enriching themselves,

and issuing a loan that Ms. Golphin could not afford.

The defendants argue that the above information relating to the appraisal of the property purchased by Ms. Golphin is irrelevant under Fed.R.Evid. 401, and, even if relevant, the information is more prejudicial than probative under Fed.R.Evid. 403. The court disagrees. The above information relating to the appraisal of Ms. Golphin's property, which involves that same individuals named as defendants in this action and which purportedly involves similar circumstances as did the purchase of the plaintiff's property is relevant to the instant action. Moreover, the court finds that the probative value of this information outweighs any prejudice to the defendants. Therefore, the Innamorati defendants' motion to preclude the testimony and introduction and use of all documents regarding the appraisal of the property purchased by Mary Shirley Golphin will be denied.

In light of the above, an appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  May 29, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2005 MEMORANDA\05-1193-03.wpd